## ESTATE OF JEREMIAH WHALEN, DECEASED.

[No. 2,328; decided February 11, 1885.]

**Unsolemnized Marriage—Evidence to Establish.**—Where it appears that parties, without the sanction of any ecclesiastical ceremony, agreed between themselves to live together as man and wife, and did live as such in one place of domicile for years, and in other places, and so held themselves out to others moving in the same limited social sphere; and it further appears that each of the parties testified in a legal controversy, wherein they were both called as witnesses, to being, respectively, married persons, and stated their respective places of habitation to be where in fact they lived together at the time, their marriage is proved.

**Unsolemnized Marriage—Evidence to Establish.**—Where persons called to prove that a man and woman lived as husband and wife and held themselves out as such to others living in the same social sphere, are credible witnesses, no matter how circumscribed is their social environment, their testimony is sufficient to establish repute.

**Unsolemnized Marriage—Declarations to Support.**—Where it appears that an alleged spouse of an unsolemnized marriage has testified as a witness, subsequently to the alleged marriage, that he was a married man, such declaration is the most important evidence that can be offered in support of such a marriage.

**Marriage.—Where the Relation of Husband and Wife is Once Established,** no subsequent conduct of either spouse, which does not culminate in a legal dissolution, can affect the judicial determination of the question of their status.

Letters of administration were granted herein to Philip A. Roach, as public administrator, on March 20, 1883. Subsequently Henrietta C. Whalen gave and filed notice of her appearance in the administration, as the surviving wife of the decedent; and thereafter, at the proper stage of the administration, on November 19, 1883, filed her application for a distribution of the estate, claiming a share thereof as the widow of the deceased. This application was opposed by Joseph L. Whalen, a brother, and Jane E. Gregory, a niece of the decedent, upon the ground that the petitioner was not the surviving wife of the decedent, as claimed by her. The opinion of the court below was rendered after consideration of the testimony produced in support of the issue tendered by the opposition; and, in accordance with the decision of the court, distribution of the estate was thereafter ordered, on February 11, 1885.

M. S. Eisner, for the petitioner, Henrietta C. Whalen.

M. Lynch, contra, for decedent's brother and niece.

COFFEY, J. In this matter all the propositions of law are undisputed; the only question is as to two or three matters of fact. The applicant, Henrietta C. Whalen, claims that she entered upon the marriage state with the decedent in the city and county of San Francisco after a brief acquaintance—a year or more—without the sanction of any ecclesiastical ceremony, but after an agreement between them to live together as man and wife, followed by an immediate assumption of marital relations; and they continued to cohabit for several years, except at intervals when she went to the country on account of her health, being troubled with a neuralgic affection which was aggravated at seasons by the climate of San Francisco, according to her testimony. For years these two lived together in the northeast corner of Kearny and Jackson streets, and in other places, as man and wife, and held themselves out as such to others moving in the same limited social sphere; this is proved by the evidence of Mr. Thurston, Mr. Findley and Mrs. Taylor (or McCarthy as she is now) and her daughters and son. They are credible witnesses, and no matter how circumscribed their

social environment it is sufficient to establish repute. Mrs. Whalen herself testified that she was not in the habit of making acquaintances, but "was a great hand to stay at home," and that neither before nor after marriage did she visit families, except those in the house wherein she was domiciled.

There is one fact in evidence which is more important than any other—the pivotal fact of this case, namely, the oath-bound declaration of Jeremiah Whalen, the decedent, made at a time while he and Henrietta were living on the northeast corner of Kearny and Jackson streets, which shows not only that they had a habitation there, but that they held to each other the relation of husband and wife. This is more important, I say, in support of applicant's case than any other fact in evidence, because you cannot take a man's declaration in a more solemn way than when on the witness-stand under the sanction of an oath, and examined under the forms of law and with a knowledge of the pains and penalties of perjury, and the consequences of his declaration with regard to his family circumstances and the influence of his statement upon his private fortune. Under such circumstances in the case of Wight v. Wight, before Court Commissioner Robert C. Rogers, in 1866, Jeremiah Whalen, the decedent, swore that he was a married man and lived in this house, northeast corner Kearny and Jackson streets.

The applicant here was examined in the same controversy before Commissioner Rogers, and testified that she was a married woman living with her husband, and that her name was Henrietta C. Whalen, and that she lived in that house at the time of her testimony. She signed her name "Henrietta C. Whalen." It should seem that these two persons were no other than the decedent and the applicant; and by their own statements contemporaneously made, and in the same proceedings under judicial oath, they sustained to each other the relation of husband and wife. These declarations seem to me to be sufficient corroboration of applicant's testimony as to the contraction and consummation of the marriage and the subsequent continuous cohabitation for years. In addition, while she was absent from the city Mr. Whalen

constantly corresponded with her, although, except in one instance, he did not address her as "my dear wife," or subscribe himself as husband, yet he superscribed his letters to her by his own surname, "Mrs. Henrietta C. Whalen." That is a public recognition, which was fortified by declarations made more than once to persons who addressed him; Mr. John H. Harney, for one, a fellow-clerk in a public office, when the latter found on Mr. Whalen's desk a letter so superscribed; also at another time to Mons. Perrier, the restaurateur. These declarations were made at a very late date long after the informal nuptials. Mrs. Whalen, for reasons already suggested by her, left this city and went into the interior and to the mountains, and pursued an irregular life for years; but, as I have had occasion to say in another case, "once establish the relation of husband and wife between these parties and the subsequent conduct of either of them, which does not culminate in a legal dissolution, cannot affect the judicial determination of the question of their status." She may have misconducted herself, may have been a bigamist, subsequently, still her legal rights were vested by the law, which courts sit to administer, not to set aside; the judge's personal views as to such marriages or such misconduct should not affect the court's administration or application of the law. The court finds the fact and applies the law; it finds the facts proved as alleged, and that the applicant is the surviving wife of the decedent intestate, Jeremiah Whalen. His own conduct inconsistent with his relation to Henrietta—the fact that he led Mrs. Stees, a witness in this proceeding, to believe that he was unmarried, does not detract from the strength of what has been said. Mrs. Stees' testimony may be taken as true, and, so far as this discussion is concerned, there is no necessity of imputing inveracity to any witness in this proceeding; Mrs. Stees' statement need not be challenged—her own eccentricity of matrimonial conduct has no bearing upon her credit as a witness; and accepting her testimony as truthful, it would appear that Jeremiah Whalen, for the purpose of deceiving her and contracting an alliance with her, discarded his first spouse and led the witness to believe that he was a free man. Cases

of that kind are so numerous that it is not necessary to dilate thereupon.

So far as such a marriage can or need be established, it has been established in this case. The prayer of the petitioner is granted. Let the appropriate decree be framed and submitted to the court.